726 So.2d 84 (1998)
STATE of Louisiana
v.
Francisco REYES.
No. 98-KA-424
Court of Appeal of Louisiana, Fifth Circuit.
December 29, 1998.
*86 Paul D. Connick, District Attorney, Terry M. Boudreaux, Ellen S. Fantaci, Gregory M. Kennedy, Michael S. Futrell, Assistant Dist. Attys., Gretna, LA, for Plaintiff-Appellee.
Katherine M. Franks, Louisiana Appellate Project, Baton Rouge, LA, For Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and THOMAS F. DALEY.
DUFRESNE, Judge.
The Jefferson Parish District Attorney filed a five count bill of information charging the defendant, Francisco Reyes, with conspiracy to distribute cocaine, LSA-R.S. 40:979:967A; distribution of cocaine, LSA-R.S. 40:967A; possession with the intent to distribute cocaine, LSA-R.S. 40:967A; possession of cocaine over 400 grams, LSA-R.S. 40:967F; and illegal carrying of a weapon while in possession of a controlled dangerous substance, LSA-R.S. 14:95E. The matter thereafter proceeded to trial on two of the five counts, specifically distribution of cocaine and possession of cocaine over 400 grams. At the conclusion of the trial, the jury found the defendant guilty of attempted distribution of cocaine and possession of over 400 grams of cocaine. The defendant subsequently filed a motion for new trial, or alternatively for deviation from the prescribed sentence. Following the denial of this motion, the trial court sentenced defendant to two and one half (2½) years at hard labor on the attempted distribution of cocaine conviction, and thirty (30) years at hard labor on the possession of cocaine conviction, without benefit of parole, probation or suspension of *87 sentence. The court ordered the sentences to be served concurrently and also afforded the defendant credit for time served. It is from these convictions and sentences that the defendant now appeals.

FACTS
On January 13, 1995, the Jefferson Parish Sheriff's Office and the Drug Enforcement Agency began an investigation into drug activity based on information supplied by a confidential informant regarding large amounts of cocaine being sold in Jefferson Parish. As a result of the joint investigation, five men, Sean Arcement, Sammy DeSalvo, Jose Barquero, Albert Suero, and the defendant, Francisco Reyes, were arrested.
The investigation began after a confidential informant told DEA Special Agent Dan Holmes that Sean Arcement was selling quarter kilos of cocaine in Jefferson Parish. According to the investigators, in order to establish the operation, an undercover agent approached Sean Arcement about buying a quarter kilo of cocaine. Sean Arcement agreed to the sale and contacted Sammy DeSalvo about purchasing the cocaine to sell to the agent.
DeSalvo testified that he contacted Jose Barquero to see if Barquero had access to cocaine. DeSalvo testified at trial that the agreement was that Barquero would deliver the drugs to DeSalvo and later Arcement would give DeSalvo the money to pay for the drugs. Barquero testified that he spoke to Albert Suero about buying drugs. Suero told Barquero he was aware that the defendant was a possible source for drugs. Suero and Barquero both testified that, on January 13, 1995, they went to defendant's trailer where the defendant gave the two men a car battery with a hollow compartment which the defendant said contained drugs. After replacing their existing car battery with the altered battery, the two men drove to an auto body shop run by Sammy DeSalvo to drop off the cocaine. Barquero and Suero both testified that no money changed hands at this point but that they were to return later with money from DeSalvo.
Immediately after the drugs were dropped off at DeSalvo's shop, DeSalvo contacted Sean Arcement. Arcement arrived at DeSalvo's shop and picked up the majority of the cocaine leaving about an ounce of cocaine at the shop. After he picked up the drugs from DeSalvo's shop, Sean Arcement was arrested. At the time of his arrest, Sean Arcement possessed nine ounces of cocaine (approximately a quarter of a kilo) as well as other drug paraphernalia. After his arrest, Arcement told the police he had obtained the cocaine from DeSalvo, and he agreed to cooperate with the police in their investigation.
While cooperating with the police, Arcement called Sammy DeSalvo to set up a meeting under the guise of paying for the cocaine. When DeSalvo arrived at the meeting place, the police arrested him for distribution of cocaine. After his arrest, DeSalvo also agreed to cooperate with the police in their investigation. DeSalvo consented to a search of his auto body shop and told the police about the cocaine which was hidden in a toolbox.
While the police were present at DeSalvo's body shop, Barquero and Suero telephoned DeSalvo. One of the police officers answered the telephone call and told the two men to come to the body shop. When Barquero and Suero arrived, they were also arrested. After his arrest, Barquero agreed to cooperate with the police. That same night, Barquero pointed out the defendant's trailer to the investigating officers as the place where he had obtained the cocaine earlier that day. After Barquero identified defendant's trailer, the police knocked on the door of the trailer and attempted to speak with the defendant. However, because it appeared that the defendant did not speak English, the agents waited for an agent who spoke Spanish to arrive at the scene. DEA Special Agent Frank Garza testified that after he arrived at the defendant's trailer he translated the consent to search form for the defendant into Spanish. Agent Garza further testified that defendant stated that he understood the document, and that defendant signed the form and gave consent for the officers to search his trailer.
During a search of the trailer, police recovered a .45 caliber pistol, a magazine loaded *88 with seven live .45 rounds, a bag with three live nine-millimeter bullets as well as approximately one kilo of cocaine, numerous rubber bands, a scale, and brown wrapping tape. After the contraband was found, defendant was arrested.
At trial, defendant testified on his own behalf that he had never seen the altered battery before and that he did not know how the cocaine got into the back room of his trailer. He further testified that on January 13, 1995, Barquero asked to go into defendant's trailer to use the bathroom after he saw a police car on the street in front of defendant's trailer park.
Based on the foregoing testimony, the jury found that defendant was guilty of attempted distribution of cocaine and possession of over 400 grams of cocaine.

SUFFICIENCY OF EVIDENCE
In his first assignment of error, the defendant challenges the sufficiency of the evidence used to convict him. He argues that the evidence in this case is so inconsistent and incredible that no rational jury would have returned a guilty verdict against him for either offense.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La. 1986). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984); State v. Ruffin, 96-226 (La.App. 5 Cir. 8/28/96), 680 So.2d 85. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Burrow, 565 So.2d 972, 976 (La.App. 5 Cir.1990), writ denied, 572 So.2d 60 (La.1991).
In the present case, defendant was convicted of possession of cocaine in excess of 400 grams and attempted distribution of cocaine. Because the defendant was convicted of these offenses, the State had the burden of proving beyond a reasonable doubt that the defendant had control over and thereby knowingly and specifically intended to possess, the cocaine. LSA-R.S. 40:967F and 40:979:967A; State v. Bell, 566 So.2d 959 (La.1990); State v. Cooper, 93-863 (La.App. 5 Cir. 3/16/94), 635 So.2d 301. The element of possession may be established by showing that the defendant exercised either actual or constructive possession of the substance. A person not in physical possession of narcotics may have constructive possession when the drugs are under that person's dominion or control. State v. Ruffin, 96-226 (La.App. 5 Cir. 8/28/96), 680 So.2d 85.
Guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge may be inferred from the circumstances. State v. Riley, 587 So.2d 130 (La.App. 2d Cir.1991). Proximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence. State v. Johnson, 404 So.2d 239 (La.1981). However, the mere presence of the defendant in the area where a controlled dangerous substance is found, or mere association with a person in possession of the substance, is insufficient to constitute constructive possession. State v. Cann, 319 So.2d 396 (La. 1975); State v. Egana, 97-0318 (La.App. 4 Cir. 12/3/97), 703 So.2d 223.
Several factors may be considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession. They are (1) the defendant's knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant's access to the area where the *89 drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia and (6) evidence that the area was frequented by drug users. State v. Appacrombie, 616 So.2d 285, 288 (La.App. 2 Cir.1993), writ denied, 623 So.2d 1302 (La. 1993).
In the present case, we have reviewed the evidence and find it to be sufficient to sustain the defendant's convictions of attempted distribution of cocaine and possession of over 400 grams of cocaine. The record reveals that the cocaine was found in the defendant's home, and that along with the cocaine the police found a scale, brown wrapping tape, and numerous rubber bands. This combined with the testimony of Barquero and Suero, who identified the defendant as the supplier of the cocaine, supports the defendant's convictions. The jury, faced with conflicting evidence, apparently found the testimony of the state witnesses to be more credible and rejected the defendant's theory that he had been framed. The credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052.
Based on our review of the record, we find that the state sufficiently proved beyond a reasonable doubt that the defendant was guilty of attempted distribution of cocaine and possession of cocaine over 400 grams. Accordingly, we reject the arguments raised by defendant in this first assignment of error.

SENTENCING ERRORS
The defendant makes several assignments of error relating to his sentence. Specifically, he argues that the thirty year sentence imposed upon his conviction for possession of over 400 grams of cocaine is excessive. The defendant further asserts that the trial court erred in refusing to deviate from the statutory sentencing range given the existence of unusual circumstances justifying a lesser sentence. Lastly, he argues that the trial court committed reversible error when he failed to wait twenty-four hours between the denial of the motion for new trial and imposition of sentence as required by LSA-C.Cr.P. art. 873. That article reads as follows:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, a sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
In the instant case, there is no indication in the record that the defendant waived the twenty-four hour delay. While we acknowledge that defendant's conviction carried a mandatory prison sentence, the trial judge nonetheless had to determine the number of years to be imposed. Moreover, on appeal, the defendant specifically challenges the sentence imposed and also cites as error the trial court's failure to observe the sentencing delay. Given these circumstances, we are required to vacate the defendant's sentence and remand the matter to the trial court for resentencing. See State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Augustine, 555 So.2d 1331 (La.1990); and State v. Bowers, 97-1029 (La. App. 5 Cir. 5/27/98), 712 So.2d 302. Since we have vacated the defendant's sentence, we find it unnecessary to address the remainder of his assignments of error relating to his sentence.

INEFFECTIVE ASSISTANCE OF COUNSEL
The defendant also complains that he received ineffective assistance of counsel at the trial level. He specifically argues that counsel was ineffective in that he failed to object to the sequestration violation by Albert Suero and Jose Barquero and request sanctions, failed to object to the inadmissible hearsay evidence of "other crimes" and request a mistrial, and failed to object to the decision of the trial judge which compelled the jury, *90 who had been in court for over twelve hours, to enter into deliberations on this case.
The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is most appropriately addressed through an application for post conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. Truitt, 500 So.2d 355 (La. 1987); State v. Brown, 384 So.2d 983 (La. 1980). It is well settled, however, that where the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780 (La. 1993); State v. Junior, 542 So.2d 23 (La.App. 5 Cir.1989), writ denied, 546 So.2d 1212 (La. 1989). The instant record contains sufficient evidence to decide the ineffectiveness issue, and accordingly we will address the defendant's allegations.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. To show prejudice as required in order to establish ineffective assistance of counsel, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, 94-1361 (La.11/4/94), 644 So.2d 1055. We will now address each of defendant's allegations of ineffective assistance.

1. Introduction of the "other crimes" evidence without objection
The defendant argues that trial counsel was ineffective for failure to object to the following testimony offered by Suero:
Q [prosecutor]: So, you were going to get some drugs?
A [Suero]: Yes
Q: Who were you going to get the drugs from?
A: From Francisco
Q: How did this start: How did you first go about trying to get some? Who did you talk with?
A: I talked to Jose about the money, if he can get me the money. He said he didn't have the money at the time. He told me about Sammy, his friend. He said he had a friend who can, you know, do some business. I don't know nobody. And it passed about a month, and a friend of mine took me to Francisco's house. He got like a junkyard and I went'___ he went to buy some parts for his car. He introduced me to him, and he told me ___ when we buy the part, he told me he do, you know, drugs, buy drugs.
Q: He told you that you could get some drugs from Francisco?
A: Yeah.
The defendant argues that his counsel should have objected to this testimony as inadmissible hearsay and inadmissible "other crimes" evidence and that his failure to object resulted in the wrongful admission of the evidence resulting in prejudice.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. LSA-C.E. arts. 801(A)(1) and 801(C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. LSA-C.E. art. 802. In the instant case, we find that Mr. Suero's testimony did not constitute hearsay as it was offered to explain a chain of events, not to prove the truth of the assertion that the defendant dealt drugs. Moreover, we do not find that Mr. Suero's testimony constituted an impermissible reference to other crimes.
Generally, evidence of other acts of misconduct is inadmissible. LSA-C.E. art. 404(B)(1); State v. Prieur, 277 So.2d 126 (La.1973). However, when evidence of other crimes or bad acts tends to prove a material *91 issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain exceptions to this rule. State v. Silguero, 608 So.2d 627 (La.1992). While our Code of Evidence prohibits the use of evidence of other crimes or wrongful acts to prove the character of a person in order to show that he acted in conformity therewith, such evidence is admissible "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." LSA-C.E. art. 404B(1). Formerly known as "res gestae," evidence that constitutes an integral part of the crime is admissible without prior notice to the defense. State v. Brown, 95-124 (La. App. 5 Cir. 5/30/95), 656 So.2d 1070. In the present case, Albert Suero's testimony explained why he originally called the defendant to supply him with cocaine. Thus, the evidence was not offered for the purpose of depicting defendant as a bad person but merely to "complete the story of the crime on trial by proving its immediate context of happenings near in time and place." State v. Brewington, 601 So.2d 656 (La.1992).
Based on the foregoing discussion, we find that Mr. Suero's testimony did not constitute other crimes evidence or inadmissible hearsay, and thus trial counsel's failure to object cannot be deemed deficient performance under the first prong of the Strickland test. Moreover, even assuming that the evidence was inadmissible and that counsel's failure to object constituted deficient performance, we cannot say that the defendant was prejudiced to the extent that but for counsel's unprofessional conduct, the outcome of the trial would have been different. The jury in the instant case heard testimony that the witnesses obtained cocaine from the defendant and that cocaine was found in the defendant's residence. The complained of testimony merely duplicated other evidence presented which implicated defendant as someone who dealt drugs. Based on the foregoing, we find that defendant failed to show that counsel was ineffective for failing to lodge an objection to the complained of testimony.

2. Violation of the Sequestration Order.
Before trial in the instant case, the trial judge issued a sequestration order, ordering witnesses not to discuss their testimony with each other. However, during trial, two witnesses, Jose Barquero and Albert Suero, were observed talking to each other. The defendant argues that trial counsel was ineffective for failing to object to this violation of the sequestration order. Sequestration of witnesses is governed by LSA-C.E. art. 615 which states in pertinent part:
A. As a matter of right; exceptions. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case
* * * *
B. Violation of exclusion order. A court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when such sanctions are insufficient, disqualification of the witness.
The purpose of the sequestration rule is to prevent witnesses from being influenced by the testimony of earlier witnesses and to strengthen the role of cross-examination in developing the facts. A trial judge may, in his discretion, determine the disqualification of a witness when a rule of sequestration has been violated. Ordinarily, the trial judge's ruling will not be disturbed absent a clear abuse of discretion. State v. Sterling, 95-673 (La.App. 5 Cir. 2/27/96), 670 So.2d 1316. The mere fact that state witnesses speak to other witnesses does not establish a violation of a sequestration order and does not show possible prejudice. State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218.
In the present case, the record reveals that Mr. Suero and Mr. Barquero violated the sequestration order. However, the record further shows that trial counsel was aware of the violation, but rather than choosing to seek a remedy, he tried to use evidence of *92 the violation on cross-examination to discredit the witness. Given these circumstances, we do not find that trial counsel's failure to object to the violation of the sequestration order constitutes ineffective assistance of counsel.

3. Jury Deliberation
The minute entries in this case reflect that the second day of trial began at 10:25 a.m. on August 27, 1998, and continued with a two hour break for lunch at 12:35 p.m. and a forty minute break for sandwiches at 8:45 p.m. Trial concluded at 10:35 p.m., when the jurors began deliberation. The minutes further reflect that the jury deliberated until 12:25 a.m. when they asked for additional instructions, and continued deliberation until 1:05, when they reached a verdict. The defendant argues that trial counsel was ineffective for failing to object to the jury being allowed to deliberate after spending a full day in the courtroom. The defendant argues that compelling the jury to begin deliberations after a full day in court "precluded full consideration of the merits of the case by the exhausted panel members ..." and was thus prejudicial. However, the record reflects no evidence to suggest that the jurors were tired or forced to continue deliberations. Therefore, the defendant cannot show how he was prejudiced by counsel's failure to object to the jury being allowed to deliberate after spending a full day in the courtroom.
Based on the foregoing discussion, we reject defendant's claims of ineffective assistance of counsel and find that the defendant failed to prove that his attorney's performance was deficient and that the deficiency prejudiced him.

ERROR PATENT DISCUSSION
We have reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Such a review reveals that the trial judge failed to advise the defendant of the prescriptive period for post conviction relief. LSA-C.Cr.P. art. 930.8 provides that a defendant has three years after his judgment of conviction and sentence becomes final within which to apply for post conviction relief. Subpart C of the article requires that the trial court inform the defendant of the three year prescriptive period at the time of sentencing. Since we remand the matter for resentencing, we direct the trial judge to advise defendant of the prescriptive period for post conviction relief at that time.
For the foregoing reasons, the defendant's convictions are affirmed, his sentences are vacated, and this matter is remanded to the trial court for resentencing.
CONVICTION AFFIRMED, SENTENCE VACATED, REMANDED FOR RESENTENCING.